

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 30, 2021**

United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **Robin Griffith,** | § | **Case No. 17-31905-hdh7** |
| | § | |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| **Robin Griffith,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Adv. No. 17-03051-hdh** |
| | § | |
| **Cleveland State University Student Loans,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In this action, Robin Griffith (the "Debtor") is seeking a discharge of her student loan

obligations pursuant to section 523(a)(8) of the Bankruptcy Code.  To obtain such a discharge, she

must show that repayment of her student loans would impose an undue hardship on her.  This case

largely comes down to personal decisions the Debtor has made and the impact of those decisions on her finances. While the Court understands the Debtor's decisions and finds some of them admirable, on the whole, they are not compatible with obtaining a discharge of student loan obligations. The Court has sympathy for the Debtor's situation, but based on these Findings of Fact and Conclusions of Law, the Court determines that the Debtor has not met her burden of showing undue hardship under the controlling standard in the Fifth Circuit for interpreting and applying 11 U.S.C. § 523(a)(8).

### Jurisdiction and Venue

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding involves a core matter under 28 U.S.C. § 157(b)(2)(A) and (I), as the adversary proceeding involves a determination as to the dischargeability of a particular debt. Venue for this adversary proceeding is proper pursuant to 28 U.S.C. § 1409(a).

### Procedural History

On May 26, 2017, the Debtor filed her *Complaint to Determine Dischargeability of Debt* [Docket No. 1] (the "Original Complaint") seeking a determination that repayment of her student loans would impose an undue hardship and they may therefore be discharged under 11 U.S.C. § 523(a)(8). The Original Complaint named six defendants: (1) Cleveland State University Student Loans ("CSU"), (2) the United States Department of Education (the "DOE"), (3) Great Lakes Higher Education Corporation ("Great Lakes"), (4) FedLoan Servicing, (5) the Missouri Department of Higher Education, and (6) Washington University ("WU").

In late July 2017, the Educational Credit Management Corporation ("ECMC") filed motions to substitute in this adversary proceeding as a defendant in the place of the Missouri

Department of Higher Education[1] and Great Lakes.[2] Both of these substitution motions were granted by agreed order.[3]

On August 22, 2017, the Debtor filed the *Amended Complaint to Determine Dischargeability of Debt* [Docket No. 31] (the "Amended Complaint"). The Amended Complaint seeks the same relief as the Original Complaint but (i) named the original defendants, (ii) revised FedLoan Servicing to "Pennsylvania Higher Ed. Assistance Agency (aka: FedLoan Servicing)" (referred to herein as "PHEAA"), and (iii) added two additional defendants: (1) the Ohio Department of Higher Education and (2) ECMC.

PHEAA subsequently filed a motion to dismiss,[4] which was granted after PHEAA made the admission that it does not hold the debt at issue and is not asserting a claim against the Debtor.[5] In light of the substitutions and the order dismissing the Amended Complaint against PHEAA, the defendants remaining in this lawsuit are CSU, the DOE, ECMC, and WU (the "Remaining Defendants").[6]

---

[1] *Motion of Educational Credit Management Corporation, Under B.R. 7025, for Substitution as Defendant in the Place of Named Defendant Missouri Department of Higher Education* [Docket No. 5].

[2] *Motion of Educational Credit Management Corporation, Under B.R. 7025, for Substitution as a Defendant in the Place of Named Defendant Great Lakes Higher Education Corporation* [Docket No. 8].

[3] *Agreed Order Granting the Unopposed Motion of Educational Credit Management Corporation, Under B.R. 7025, for Substitution as Defendant in the Place of Named Defendant Missouri Department of Higher Education* [Docket No. 21]; *Agreed Order Granting the Motion of Educational Credit Management Corporation, Under B.R. 7025, for Substitution as Defendant in the Place of Named Defendant Great Lakes Higher Education Corporation* [Docket No. 29].

[4] *Defendant Pennsylvania Higher Education Assistance Agency's Motion to Dismiss Amended Complaint* [Docket No. 36].

[5] *See Order Granting Motion to Dismiss Defendant Pennsylvania Higher Education Assistance Agency as Defendant in this Adversary Proceeding* [Docket No. 52].

[6] The Ohio Department of Higher Education is not listed as a Remaining Defendant because the allegation in the Amended Complaint is that the loans that were held by the Ohio Department of Higher Education and serviced by Great Lakes have been transferred to ECMC.

After extensive discovery and several delays in this adversary proceeding, the Remaining Defendants began filing motions for summary judgment in June 2019,[7] which the Court denied in February 2020.[8] Shortly thereafter, the Debtor filed two motions for summary judgment: (1) the *Plaintiff's Motion for Summary Judgment of Perkins Loans* [Docket No. 175] seeking cancellation of certain "Perkins Loans" owed to CSU and WU pursuant to 34 C.F.R. 674.56(a)(1), and (2) the *Plaintiff's Motion for Summary Judgment of Private Student Loans* [Docket No. 176] seeking the discharge of certain private student loans held by WU. As the Court explained in its order denying these motions, the relief requested went beyond the scope of the Amended Complaint.[9]

On May 20, 2021, the parties filed a *Joint Pretrial Order* [Docket No. 226] in which they were able to stipulate to most of the facts relevant to this action.[10]

The Court held trial in this matter on June 9 and 10, 2021 and took the matter under brief advisement. The following are the Court's Findings of Fact and Conclusions of Law, issued pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7052.[11]

### **Relevant Factual Background**

Beginning in the fall of 2000, the Debtor attended Mineral Area College, where she obtained an associate's degree in psychology in May 2002. She subsequently attended Washington University in St. Louis, where she received a bachelor's degree in psychology in May

---

[7] *The United States of America's Motion for Summary Judgment* [Docket No. 111]; *The Washington University's Motion for Summary Judgment* [Docket No. 114]; *Motion of Defendant Educational Credit Management Corporation for Summary Judgment* [Docket No. 117]; *Cleveland State University's Motion for Summary Judgment and Brief in Support* [Docket No. 143].

[8] *Order Denying Defendants' Motions for Summary Judgment* [Docket No. 173].

[9] *Order Denying Plaintiff's Motions for Summary Judgment* [Docket No. 182].

[10] The Debtor was representing herself until late 2019 when Stephen Cochell began representing her *pro bono*. Since then, Mr. Cochell has been helpful to this process, and the Court appreciates his involvement.

[11] Any Finding of Fact more properly construed as a Conclusion of Law shall be considered as such, and *vice versa*.

2005. From the fall of 2006 to the conclusion of the spring semester in 2011, the Debtor attended Cleveland State University. While at CSU, the Debtor obtained a master's degree in clinical psychology and began coursework for a doctoral degree.

To fund her education, the Debtor borrowed funds from several different lenders, and those loans are currently held by the Remaining Defendants. As of the date of filing of the Amended Complaint, the Debtor estimated that she owes the Remaining Defendants approximately $218,000 in principal, interest, and fees.

While in school, the Debtor was able to work full time as a psychometrist, testing patients for neurological disorders. She held this position from 2008 until July 2014, when she moved from Cleveland to Dallas to live with her partner (referred to herein by his initials, "D.G."). After she moved to Texas, the Debtor found employment at Baylor University Medical Center as a psychometrist.

In late 2014, the Debtor experienced two important events: first, D.G. proposed to her; second, shortly after the proposal, D.G. was diagnosed with Parkinson's disease. Prior to his diagnosis, D.G. was a practicing attorney, but he is now unable to maintain employment and receives disability income from the Social Security Administration.

In July 2019, the Debtor moved to Virginia to be closer to her adult son who could provide emotional support for the Debtor and also provide physical assistance with the care of D.G. This voluntary move both decreased the Debtor's income and increased the Debtor's expenses. The Debtor's expenses increased partially because the cost of living appears to be generally higher in the area she moved to in Virginia. The Debtor's income decreased because the Debtor has had

difficulty finding an acceptable job that would pay as much as the job she left in Dallas to make the move to Virginia.

Shortly after moving to Virginia, the Debtor found a job as a psychometrist with George Washington Medical Faculty Associates with an annual salary of $54,000.  However, the Debtor only held this job for about a month.  In the spring of 2020, the Debtor once again found employment, but was terminated during the onboarding process due to the sudden onset of the COVID-19 pandemic.  Since then, the Debtor has not been able to find full-time employment as a psychometrist.  The Debtor does receive unemployment benefits and has attempted to supplement her income in several ways.  She recently obtained her real estate license in Virginia and began working for Keller Williams, a realty company.  However, the Debtor has only received income from two sales in the fifteen months since she took on this new role.  The Debtor has also been able to find part-time contract work as a psychometrist.

 As of the time of trial, the Debtor stated that she is not currently willing to relocate D.G. to a nursing home.  She testified that there is nothing to indicate that she cannot be employed in the future, but she also testified that she does not believe she can return to work full-time at present, as she needs to care for D.G.

### Legal Analysis

Bankruptcy Code section 523(a)(8) prevents the discharge of student loan debt "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."  The Debtor's student loans identified in the Amended Complaint each constitute "an educational . . . loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution" as

provided by 11 U.S.C. § 523(a)(8)(A)(i).[12]  In order to discharge such a debt, debtors must show

that the debt, if excepted from discharge, would impose an "undue hardship" on the debtor and the

debtor's dependents.

"Undue hardship" is not defined by the Bankruptcy Code.  However, this Court is bound

by Fifth Circuit precedent requiring a debtor seeking an "undue hardship" discharge of student

loans under section 523(a)(8) to show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*United States Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003) (citing

*Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)).  This

three-prong test is commonly referred to as the *Brunner* test and is the controlling law in this

Circuit, as construed in *Gerhardt*.  *Thomas v. Dep't of Educ. (In re Thomas)*, 931 F.3d 449 (5th

Cir. 2019).  At trial, the debtor has the burden of proof to show that all three prongs of the *Brunner*

test have been met.  *Kettler v. Great Lakes Higher Educ. Serving Corp. (In re Kettler)*, 256 B.R.

719, 723 (Bankr. S.D. Tex. 2000).

### *Prong 1: Ability to Maintain a Minimal Standard of Living*

The first prong of the *Brunner* test requires a showing that the debtor cannot maintain,

based on current income and expenses, a "minimal" standard of living for herself and her

---

[12] On page 3 of the Amended Complaint, the Debtor summarizes her student loans into categories of (1) Direct Stafford Unsubsidized, (2) Direct Stafford Subsidized, (3) FFEL Stafford Subsidized, (4) FFEL Stafford Unsubsidized, and (5) Federal Perkins (the "Student Loans").  On page 4 of the Amended Complaint, the Debtor stipulates that the Student Loans are nondischargeable unless their exception to discharge would constitute an undue hardship to the Debtor.

dependents if forced to repay the loans. Tight finances are not sufficient. The debtor must establish that she cannot afford reasonably necessary living expenses if she is forced to repay her student loans. *Salyer v. Sallie Mae Servicing Corp. (In re Salyer)*, 348 B.R. 66, 71 (Bankr. M.D. La. 2006). For the purposes of this analysis, a reasonably necessary living expense is one that the debtor cannot cut from her budget while maintaining a minimal standard of living. *Id.* The Bankruptcy Code does not, however, require that the debtor live in abject poverty before a student loan may be discharged. *Little v. United States Dep't of Educ. (In re Little)*, 607 B.R. 853, 859 (Bankr. N.D. Tex. 2019).

In the past few years, the Debtor and her partner have maintained a fairly high level of income.[13] The Debtor and her partner had combined gross income of $76,568.11 in 2017, $79,470.23 in 2018, and $76,653.10 in 2019. The Debtor and her partner had a total household income of $66,707.10 in 2020 after deducting D.G.'s insurance payment deducted by Medicare.

In 2021, D.G. will be paid $31,254 in Social Security Disability without a deduction for Medicare. The Debtor continues to receive income from unemployment benefits and her part-time contract work as a psychometrist. She is also working as a realtor and has received government stimulus during 2021.

The Debtor's expenses over the past few years have also been high. The Debtor's high expenses, however, appear to be the result of decisions the Debtor has made rather than necessity. When the Debtor moved from Cleveland to Dallas, for instance, she kept her apartment in Cleveland for almost two years rather than trying to terminate the lease early and avoid unnecessary expense. The Debtor also chose to provide financial support to her adult child at one point. In 2017, the Debtor purchased a 2015 Cadillac SRX. While the Court understands the

---

[13] To put the Debtor's income in perspective, the federal poverty level for a household of two is currently $17,420.

Debtor had need for a larger vehicle and used this single vehicle to replace two others, the Debtor spent more on the vehicle and an expensive maintenance plan than was necessary. The Debtor also spends more on discretionary expenses such as entertainment than is necessary.[14]

The Debtor's current budget still includes expenses that are well above what would be necessary to maintain a minimal standard of living. Plaintiff's Exhibit 36 is a budget showing annualized expenses of $81,453.60. This includes monthly expenses of $2,540 for rent, $620 for a car payment, $179.80 for a car maintenance plan, $85 for tolls, $275 for phones, and $550 for vitamins. Without belaboring the point, the Court finds, based on the evidence presented, that expenses such as these could be drastically reduced while still maintaining a minimal standard of living.

Based on the stipulations and evidence presented at trial regarding the Debtor's income, expenses, and the payments options for her Student Loans, the Court finds the Debtor could maintain a minimal standard of living if forced to repay the Student Loans and therefore does not satisfy the first prong of the *Brunner* test for undue hardship.

### Prong 2: Additional Circumstances

The second prong of the *Brunner* test requires a showing that additional circumstances exist indicating that the debtor's state of affairs is likely to persist for a significant portion of the repayment period of the student loans. The "additional circumstances" that adversely affect a debtor's future earning potential must have either been not present at the time the debtor applied for the loans or were present but have since been exacerbated. *In re Gerhardt*, 348 F.3d at 92. In this Circuit, the second prong of the *Brunner* test is especially difficult to meet. *See id.* ("This second aspect of the [*Brunner*] test is meant to be a 'demanding requirement.'") (quoting *Brightful*

---

[14] *See, e.g.*, Joint Pretrial Order at ¶¶ 46, 47, 50, 51, 54, 55, 58, and 59.

*v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328 (3d Cir. 2001)).  The

Fifth Circuit has indicated that a showing that the debtor is currently in financial straits is not

enough—the circumstances must be outside the debtor's control and result in a "total incapacity"

to pay debts now and into the future.  *Id*.

The Debtor is well-educated and highly qualified for positions as a psychometrist, and she

has been able to quickly find employment in the past.  While she is having difficulty finding

employment at the moment, this appears to be due to the COVID-19 pandemic and not likely to

persist for a significant portion of the repayment period of her Student Loans.  The Debtor has no

health issues that affect her ability to obtain employment or repay her student loan debt.  The

Debtor has an adult son, but neither she nor her partner have any minor children living with them.

While the Debtor has expressed some uncertainty as to her ability to obtain full-time

employment while caring for her partner, this is based partly on the Debtor's preference for caring

for her partner herself rather than utilizing the services of a nursing home.  While the Court

understands the Debtor's desire to care for her partner personally, this is not outside the debtor's

control and does not result in a "total incapacity" to pay debts now and into the future.  The Court

finds that the Debtor does not satisfy the second prong of the *Brunner* test for undue hardship.

### Prong 3: A Good Faith Effort to Repay the Loans

The third prong of the *Brunner* test requires a showing that the debtor has made good faith

efforts to repay the loans.  While this inquiry overlaps with the other prongs, "the primary focus

of the third prong is on the debtor's repayment efforts." *In re Little*, 607 B.R. at 861.  Accordingly,

courts take note of the debtor's efforts to put herself in a position that would enable her to repay

her loans, specifically, "efforts to obtain employment, maximize income, and minimize expenses."

*Russ v. Tex. Guaranteed Student Loan Corp., (In re Russ)*, 365 B.R. 640, 645 (Bankr. N.D. Tex.

2007). Attempts to consolidate loans may also contribute to a good faith finding, but do not, in and of themselves, constitute a good faith effort to repay the loans. *In re Salyer*, 348 B.R. at 72. Debtors are expected to attempt payments according to an approved consolidation or repayment plans, and courts look primarily for voluntary payments. *Wynn v. Educ. Credit Mgmt. Corp. (In re Wynn)*, 378 B.R. 140, 150 (Bankr. S.D. Miss. 2007). Where the debtor has failed to make payments, "[t]he 'overarching inquiry' is whether the payment delinquency 'is the result of factors beyond [the debtor's] control.'" *In re Little*, 607 B.R. at 861; *see also McMullin v. United States Dep't of Educ. (In re McMullin)*, 316 B.R. 70, 81 (Bankr. E.D. La. 2004) (stating that the debtor's good faith is "interpreted in light of his ability to pay").

In this case, the Debtor did not demonstrate a good faith effort to repay the loans consistent with the third prong of the *Brunner* test. A good faith effort most clearly manifests in actual payments. Following the Debtor's deferments and forbearances, she failed to make payments toward her loan balance, even when she could have done so by lowering her expenses. Aside from one isolated payment to a single lender in September 2014, the Debtor has shown no evidence of voluntary payments on her loans. Nor has she demonstrated that her failure to pay resulted from factors beyond her reasonable control.

The Debtor's decision to move to Virginia had a detrimental effect on the Debtor's employment options, potential income, and cost of living. The Debtor is entitled to make decisions premised on personal as well as financial considerations, even if those decisions ultimately hinder her ability to pay off her debt, but the Court has made clear in *Brunner* and its successors that knowingly lowering income and/or increasing expenses weighs against a finding of good faith. Even within the constraints of her new living situation, the Debtor failed to show that she

minimized expenses, and further, that any funds saved through her financial decisions were put toward her student loans.

The Debtor's attempts to consolidate her loans were successful in part, but she failed to make any payments following consolidation. While the Debtor exploring her options for a lower monthly payment may contribute to a good faith finding, merely pursuing a consolidation or repayment options does not absolve the Debtor of her responsibility to make actual payments under that plan. Unlike in a forbearance or deferment, the Debtor agreed in her consolidation and repayment plan communications to pay a determined amount on her debt. She did not pay accordingly. The Debtor filed for bankruptcy shortly after these attempts, showing a short-lived effort, if any, to follow through with the plan.

The Debtor has generally failed to maximize her income and minimize her expenses. While the Debtor has taken several actions that indicate a desire to minimize payments due, these actions do not constitute a good faith effort to make payments on the loans. What can be described in this case as small steps in the right direction unfortunately do not reach the standard set by *Brunner* as a good faith effort to pay. The Court therefore finds that the Debtor does not satisfy the third prong of the *Brunner* test for undue hardship.

## Conclusion

For the reasons stated above, the Court finds the Debtor has not satisfied her burden of showing that repayment of her Student Loans would impose an undue hardship on her within the meaning of section 523(a)(8) of the Bankruptcy Code. The Court will enter a separate judgment denying the relief requested in the Amended Complaint.

### End of Findings and Conclusions ###